# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION

| | |
|---|---|
| TRACY MAE DEVEREAUX,<br><br>Plaintiff,<br><br>vs.<br><br>KILOLO KIJAKAZI, Commissioner of Social Security,<br><br>Defendant. | CV-22-02-BU-BMM<br><br><br>**ORDER** |

## INTRODUCTION

Tracy Mae Devereaux ("Devereaux") brings this action under 42 U.S.C. § 405(g), seeking judicial review of an unfavorable decision by the Commissioner of Social Security ("Commissioner"). (Doc. 1); (Doc. 20.) Devereaux prays that the Court grant a period of Social Security disability and disability payments based upon her application for benefits. (Doc. 1 at 4); *see* (Doc. 4 at 190-196.) Devereaux requests alternatively that the Court remand this action to the Administrative Law Judge for reconsideration. (Doc. 1 at 4.) The Commissioner opposes Devereaux's motion. (Doc. 23.)

## JURISDICTION

1

The Court retains jurisdiction over this action under 42 U.S.C. § 405(g). Venue is proper given that Devereaux resides in Silver Bow County, Montana. 28 U.S.C. § 1391(e)(1); L.R. 1.2(c)(2); *see* (Doc. 1 at 1.)

## PROCEDURAL BACKGROUND

Devereaux filed a Title II and a Title XVIII application for a period of disability and disability insurance benefits on January 22, 2018. *See* (Doc. 4 at 94.) Her claims were denied on October 3, 2018. (*Id.* at 94-106.) Devereaux's claims were again denied on reconsideration on April 17, 2020. (*Id.* at 126-129.)

Devereaux requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 134). The ALJ issued an unfavorable decision concerning Devereaux's application on April 14, 2021. (*Id.* at 40-57.) Devereaux sought review from the Appeals Council of the Social Security Administration of that decision. (*Id.* at 186-189.) The Appeals Council denied Devereaux's request for review of the decision on November 17, 2021. (*Id.* at 6-9.) The ALJ's unfavorable decision is at issue in this action.

## STANDARD OF REVIEW

The Court reviews the Commissioner's final decision under the substantial evidence standard; the decision will be disturbed only if it is not supported by substantial evidence or if it is based on legal error. *See* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial

evidence, shall be conclusive"); *see also Smolen v. Chater,* 80 F.3d 1273, 1288 (9th Cir. 1996). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Webb v. Barnhart*, 433 F.3d 683, 678 (9th Cir. 2005). "'Substantial evidence' means 'more than a scintilla,' but 'less than a preponderance.'" *Smolen*, 80 F.3d at 1279 (internal citations omitted).

The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Green v. Sheckler*, 803 F.2d 528, 534 (9th Cir. 1986.) The Court may reject the findings not supported by the record, but it may not substitute its findings for those of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISABILITY CRITERIA

A claimant is disabled for purposes of the Social Security Act if the claimant demonstrates by a preponderance of the evidence that (1) the claimant has a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months;" and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the

claimant is not only unable to perform previous work but also cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382(a)(3)(A), (B)).

Social Security Administration regulations provide a five-step sequential evaluation process to determine disability. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920. The five steps are as follows:

1. Is the claimant presently working in a substantially gainful activity? If so, the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. § 416.920(e).

4. Is the claimant able to do any work that he or she has done in the past? If so, the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. § 404.1520(f), 416.920(f).

5. Is the claimant able to do any other work? If so, the claimant is not disabled. If not, the claimant is disabled. *See* 20 C.F.R. § 416.920(g).

*Bustamante*, 262 F.3d at 954. The claimant bears the burden of proof at steps one through four. *See id.* The Commissioner bears the burden of proof at step five. *Id.*

## FACTUAL BACKGROUND

### I. The ALJ'S Determination

At step one, the ALJ found that Devereaux had not engaged in substantial gainful activity since the alleged onset date of May 14, 2016. (Doc. 4 at 46.) The ALJ determined that Devereaux met the insured status requirements of the Social Security Act through December 31, 2020. (*Id.*)

At step two, the ALJ found Devereaux to be afflicted with five severe impairments through the date last insured: degenerative disc disease of the cervical spine; mild to moderate diffuse disc space narrowing; mild levoscoliosis; Raynaud's syndrome; and fibromyalgia. (*Id.*) The ALJ identified several "non-severe" medically determinable impairments: symptomatic hypotension, slightly enlarged uterus, small fibroid, left ovarian cyst/endometriosis, irritable bowel syndrome, headache, anxiety, and depression. (*Id.*)

At step three, the ALJ found that Devereaux did not have an impairment or combination of impairments that met or medically equaled the severity described in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1. (*Id.* at 48.)

At step four, the ALJ determined Devereaux's residual functional capacity ("RFC") and then evaluated whether it would allow Devereaux to perform any past

5

relevant work. (*Id.* at 49-57.) The ALJ followed the two-step process to determine Devereaux's RFC. The ALJ first evaluated whether Devereaux's impairments could produce her alleged symptoms. The ALJ then considered the intensity, persistence, and limiting effects of those symptoms and the resulting limitations on Devereaux's potential work activities. (*Id.*)

The ALJ determined that Devereaux's severe impairments could cause the alleged symptoms. (*Id.* at 51.) The ALJ concluded, however, that Devereaux's "statements concerning the intensity, persistence, and limiting effects of these symptoms" proved "not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id.*) The ALJ determined that Devereaux possesses the residual functional capacity to perform a reduced range of light work with certain restrictions:

> She can lift/carry/push/pull 25 pounds frequently and 50 pounds occasionally. She can walk and stand about six hours in an eight-hour day with normal work breaks and sit about six hours in an eight-hour workday with normal work breaks, which are defined as occurring every two hours with two breaks lasting at least ten minutes and one lasting at least 30 minutes. The claimant can lift and carry only ten pounds frequently and 20 pounds occasionally with the left upper extremity alone. She can frequently push and pull and occasionally reach overhead with the left upper extremity and frequently handle with the left upper extremity. She can frequently climb ramps and stairs, balance, stoop, kneel, and crouch and occasionally crawl and climb ladders, ropes, or scaffolds. The claimant must avoid even moderate exposure to extreme cold, and concentrated exposure to vibrations and work hazards.

> The claimant can understand, remember, and carry out simple, detailed, complex tasks; maintain attention, concentration, persistence, or pace for such work for eight-hour workdays and 40-hour workweeks; tolerate interaction with supervisors, coworkers, and the public; tolerate usual work situations; and tolerate changes in routine work settings.

(*Id.* at 49-50.) The ALJ determined that Devereaux possessed the residual functional capacity to perform work as a phlebotomist, which was relevant work that she had done in the past. (*Id.* at 55.) The ALJ nevertheless proceeded to and made alternative findings for step five. (*Id.* at 56.)

At step five, the ALJ assessed whether Devereaux could perform any other work, given Devereaux's residual functional capacity, age, education, and work experience. (*Id.* at 56-57.) The ALJ considered the vocational expert's ("VE") opinion as to whether "jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." (*Id.* at 56.) The VE identified several jobs that fulfill these criteria: fast food worker, sales attendant, and electronics worker. (*Id.* at 56-57.) The ALJ determined that Devereaux was not disabled under sections 216(i) and 223(d) of the Social Security Act through the date last insured. (*Id.* at 57.)

II. **Devereaux's Position**

Devereaux argues that the ALJ erred in the three ways: (1) failing to consider the "combined effect" of all Devereaux's impairments (Doc. 21 at 6-10); (2) failing

7

to provide an explanation for rejecting some components of medical opinions contained in the record and evaluating medical opinions improperly (*Id*. at 10-14); and (3) improperly evaluating substantial evidence that would, if properly considered, support a finding that Devereaux met restrictions set out in Hypothetical #3 of the ALJ hearing (*Id*. at 14-16).

Finally, Devereaux notes a recent idiopathic hypersomnolence diagnosis, a recent medical opinion that she has symptoms "that may be compatible with cataplexy," and the recent discovery during an MRI of an apparent enlargement of her pituitary gland for which she has been referred for surgery. (*Id*. at 17-18.) Devereaux acknowledges that medical professionals developed these medical opinions after the deadline to submit evidence for consideration before the ALJ hearing but argues the opinions may be relevant in a re-hearing. (*Id*.)

### III. Commissioner's Position

The Commissioner asserts that the Court should affirm the ALJ's decision because the ALJ reasonably considered the combined effects of Devereaux's impairments and rationally assessed the persuasiveness of medical opinions based on their consistency with the record and supportability. (Doc. 23.)

## DISCUSSION

Title 20, Part 404.1523 (c) of the Code of Federal Regulations provides as follows:

> Combined effect. In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, we will consider the combined impact of the impairments throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

In other words, an ALJ must first "consider the combined effect of all [a claimant's] impairments" at step two of the disability determination process. *Id*. If at step two the ALJ finds a "medically severe combination of impairments," then the ALJ must then "consider the combined impact of the impairments" at steps three, four, and five. *Id*. If at step two the ALJ does not find a "medically severe combination of impairments," then the ALJ must determine that the claimant is not disabled. *Id*. A claimant with a single "severe impairment" proceeds to step three, so a single severe impairment can constitute a "medically severe combination of impairments" for the purposes of 20 C.F.R. § 404.1523 (c). *See* 20 C.F.R. § 416.920 (a), (c).

The ALJ found at step two that Devereaux suffered from several impairments of such severity that they could, individually, constitute a basis of eligibility. (Doc. 4 at 46); *see* 20 C.F.R. 404.1523 (c). The ALJ was required to "consider the combined impact of the impairments" in all subsequent steps of the analysis. 20 C.F.R. 404.1523 (c).

9

Devereaux contends that at step three the ALJ failed to analyze the combined effect of Devereaux's multiple impairments. (Doc. 21 at 9.) The ALJ's findings at this step consist of a heading sentence and three paragraphs. (Doc. 4 at 48-49.) Each paragraph names one of Devereaux's impairments—"degenerative disc disease of the lumbar spine," "fibromyalgia," and "Raynaud's syndrome" respectively. (*Id.*) The ALJ proceeds to compare the named impairment to several listed impairments. (*Id.*)

The heading sentence correctly restates the question posed at step three in answer form: "Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in [the relevant C.F.R. part.]" (Doc. 4 at 48.) The ALJ fails to analyze any two or more impairments in combination to determine whether they met or equaled a listed impairment. (Doc. 4 at 48-49.) Indeed, the ALJ fails at step three to analyze all Devereaux's severe impairments as identified at step two. *See* (Doc. 4 at 46.)

The ALJ analyzes fibromyalgia and Raynaud's syndrome at step three but does not analyze or mislabels "degenerative disc disease of the cervical spine," "mild to moderate diffuse disc space narrowing," and "mild levoscoliosis." (*Id.*) The ALJ analyzes "degenerative disc disease of the *lumbar* spine" (emphasis added), which may comprise either or both "mild to moderate diffuse disc space narrowing" or

"mild levoscoliosis," but the ALJ does not explicitly state which, if either, she means. "Degenerative disc disease of the *lumbar* spine" (emphasis added) cannot include the final step-two severe impairment left out of the step three analysis, namely "degenerative disc disease of the *cervical* spine" (emphasis added). "Starting at [one's] neck and going down toward [one's] tailbone, the segments of [one's] spine include: *Cervical spine* (neck)[, . . .] Thoracic spine (middle back)[, . . .] *Lumbar spine* (lower back)[, . . .] Sacrum[, . . . and] Coccyx (tailbone)[.]" *Spine Structure and Function*, CLEVELAND CLINIC, https://my.clevelandclinic.org/health/body/10040-spine-structure-and-function (last visited December 19, 2023) (emphasis added).

"An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). The claimant in *Burch* argued that the ALJ erred by not considering claimant's obesity at step three. *Id*. The ALJ did not find that the claimant's obesity constituted a "severe impairment." *Id* at 682. The reviewing court noted that "[t]here was no evidence before the ALJ, and none in the record, which state[d] that claimant's obesity limits her functioning." *Id* at 683 (quoting order of district court below).

11

Devereaux's case proves distinguishable. Devereaux presented substantial evidence as to how her degenerative disc disease of the cervical spine and associated neck pain limited her functioning. *See e.g.* (Doc. 4 at 50.) Devereaux proffered this evidence in an attempt, in part, to establish equivalence at step three with a listed impairment. *See* (*Id.*) Additionally, unlike the obesity condition in *Burch*, the ALJ designated Devereaux's degenerative disc disease of the cervical spine as a "severe impairment." (Doc. 4 at 46.) The ALJ was required, at least, to compare Devereaux's degenerative disc disease of the cervical spine to a listing in an equivalency determination. *See Burch* at 683.

The ALJ's general statement contained in the heading sentence that "the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments" does not suffice at this step. (Doc. 4 at 48.) In *Davis v. Shalala*, 862 F. Supp. 1 (D.D.C. 1994), the ALJ made a general finding that "the evidence of record fails to establish that the claimant's impairments, considered singularly or in combination, have been of sufficient severity to meet or equal the level of criteria detailed for any impairment found in the Listing of Impairments." 862 F. Supp. 1 at 7. The *Davis* ALJ made no other mention of the combined effects of the claimant's impairments. *Id*. The *Davis* court remanded the decision to the ALJ with instructions to "consider on Remand whether the [various impairments of claimant] *together* indicate that the [claimant's]

12

combination of conditions meets or equals any Listing." *Id*. The Court likewise remands to the ALJ in this case with specific instructions to consider whether the various impairments of Devereaux *together* indicate that Devereaux's combination of conditions meets or equals any listing.

## ORDER

Accordingly, **IT IS ORDERED** that

1. Devereaux's First Motion for Summary Judgment is **GRANTED in part**.
2. The Court **REVERSES** the decision of the Commissioner of the Social Security Administration and **REMANDS** this case to the Commissioner of the Social Security Administration for further proceedings consistent with this Order pursuant 42 U.S.C. § 405(g).

DATED this 20th day of December, 2023.

_____
Brian Morris, Chief District Judge
United States District Court